IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARION GRIM, | No. C -11-01231 EDL |
| Plaintiff, | **ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| MICHAEL ASTRUE, | |
| Defendant. | |

## I. Introduction

Plaintiff Marion Grim filed this suit pursuant to 42 U.S.C. § 405(g) seeking judicial review of a decision denying her claim for disability benefits under Title II and Title XVI of the Social Security Act, 42 U.S.C. § 400 et seq., 42 U.S.C. § 1382 et seq. Ms. Grim asks the Court to grant summary judgment, reverse the final decision of the Commissioner and find her "disabled" under the Social Security Act, or alternatively, remand the case. For the following reasons, the Court DENIES Plaintiff's motion for summary judgment and GRANTS Defendant's motion for summary judgment.

## II. Procedural Background

Ms. Grim filed concurrent applications for Title II Social Security disability insurance benefits ("SSDI") and Title XVI supplemental security income ("SSI") on November 28, 2006. Administrative Record ("AR") 8. She alleges that she became disabled on August 24, 2002 due to a workplace accident in which she injured her back. AR 125. Ms. Grim claims that she has spasms in her back and legs, problems with her left arm, cannot stand for more than 20 minutes at a time, cannot walk far, and cannot reach well with her left arm. AR 125-26. Ms. Grim's application was denied on September 21, 2007 and again denied upon hearing before an Administrative Law Judge ("ALJ") on August 25, 2009. AR 5, 8. Ms. Grim requested a review of the ALJ's adverse decision on October 28, 2009, which was denied on January 7, 2011. AR 99-103, 1-4. Ms. Grim then commenced this action.

### III. Factual Background

#### A. Medical History

Ms. Grim was born August 12, 1955. AR 122. She has less than a high school education and from 1994 to 2002, she worked as a warehouse delivery supervisor. AR 126, 131. Ms. Grim is 5'1" tall and reportedly weighed 213 pounds according to the last medical note in the record prior to the hearing date. AR 125, 370. In August of 2002, Ms. Grim suffered a work-related injury resulting in an alleged disability due to a back injury, spasms in her back and legs, and problems with her left arm. AR 125.

##### 1. Dr. Warbritton

On September 17, 2002, Ms. Grim reported in a Kaiser Permanente workers' compensation claim that she had fallen on her arm at work and could not move it afterwards. AR 217. On June 3, 2003, Dr. John Warbritton, an orthopedic surgeon who treated Ms. Grim, reported that she had medial joint line and soft tissue tenderness and pain at the knee. AR 219. He recommended that Ms. Grim remain off work until she had an MRI, x-ray review and elbow hardware removed. AR 219. In a July 14, 2003 letter, Dr. Warbritton noted that Ms. Grim was temporarily totally disabled ("TTD") as of May 8, 2003 and probably months prior. AR 220. Dr. Warbritton also noted that "[s]he should be able to return to modified job duties 3-4 months postoperatively." Id. In a August 18, 2003 letter, Dr. Warbritton wrote that Ms. Grim had a "rather severe injury to her right elbow . . . [with which] she continue[d] to have significant problems" and "continue[d] on temporary total disability." AR 235. He also noted some minor back pain that he could not relate to a degree of medical probability to the specific injury of August 23, 2002. AR 235. He stated that Ms. Grim's injury to the right elbow was "clearly and entirely industrial in nature," but could not say the same for her back. AR 235.

On November 21, 2003, Dr. Warbritton wrote that Ms. Grim had a "highly satisfactory range of motion and significant pain relief" four months after surgery on her left elbow. AR 257. An MRI of her right knee confirmed that Ms. Grim had a tear of the posterior horn of the medial meniscus and a possible tear of the anterior cruciate ligament. AR 257. He further noted that Ms. Grim was experiencing increasing symptoms and that her knee had not responded to conservative medical

2

care. AR 257. In closing, Dr. Warbritton requested authorization to perform an arthroscopic partial medial meniscectomy and stated that Ms. Grim continued on TTD. AR 257. Dr. Warbritton performed surgery on Ms. Grim's right knee in February 2004. AR 177.

In a July 16, 2004 report, Dr. Warbritton opined as follows:

> 20 degree loss of extension of left minor elbow joint; frequent slight to moderate pain in elbow with vigorous use becoming moderate with very forceful use or with repetitive or forceful pushing, pulling and twisting; grip of hand being 49/69; precluded from forceful activities and from repetitive or forceful pushing, pulling or twisting; ½" atrophy of right thigh muscles; frequent slight to moderate pain in knee with any significant weight bearing becoming moderate to severe with kneeling, squatting or climbing with moderate pain with standing and walking continually in eight hour day; precluded from climbing, walking on uneven terrain, squatting, kneeling, crouching, crawling, pivoting or similar activities with loss of 'up to' 12.5% of capacity for weight bearing.

AR 229 (citing 7/16/04 Warbritton report). Dr. Warbritton's original July 16, 2004 Treating Physician's Permanent and Stationary Disability Rating Report does not appear to be in the record. See AR 226. The record does include, however, a rating determination produced by the Riggs-Wilkins Rating Service for Ms. Grim based on Dr. Warbritton's rating report. AR 229.

### 2. Dr. Tang

In his certificate for Ms. Grim's disability insurance benefits, Dr. Robert Tang, a general practitioner who was Ms. Grim's regular doctor, indicated that Ms. Grim was incapable of performing her regular or customary work as of February 17, 2006 when she first became a patient. AR 283. He also opined that Ms. Grim should report to only sedentary work and that she may be unable to return to full duty. AR 283. Dr. Tang did not suggest any surgery be performed. AR 283. He checked the "no" box where the certificate asks whether, upon his examination, the disability was a result of occupation, either as an industrial accident or as an occupational disease. AR 283.

### 3. Non-treating Physicians

#### a. Dr. Abeyta

In a March 10, 2007 report, Dr. Paul Abeyta, an orthopedic and sports medicine doctor, indicated that Ms. Grim was an "obese female in no acute distress." AR 301. In preparing his report, Dr. Abeyta consulted a lumbar spine radiograph report from February 21, 2006 that showed

3

narrowing of the L4-5 and possible L5-S1 regions. AR 301. In his musculoskeletal evaluation, Dr. Abeyta noted a normal gait pattern, heel walking without difficulty, but difficulty and dyscoordination with attempts at toe walking. AR 302. He reported that Ms. Grim had full "ROM" (range of motion) in the cervical spine, lower extremities, and upper extremities with the exception of a lack of 20 degrees of extension of the left elbow. AR 302. Dr. Abeyta also indicated a loss of lumbar lordosis, a forward flexion of 60 degrees, pain at extremes of motion in a band-like fashion over the low lumbar region, and the straight leg raise test resulting in negative bilateral. AR 302.

Based on his findings, Dr. Abeyta concluded that Ms. Grim is limited to 20 pounds of lifting on an occasional basis, ten pounds of lifting on a frequent basis in a eight-hour workday due to her low back pain, standing and/or walking limited to two to four hours in a eight-hour workday with regular breaks every 30 minutes, sitting continuously for six hours given routine breaks every two hours in a eight-hour workday, and pushing, pulling, and overhead reaching with the right upper extremity limited to an occasional basis. AR 302.

### b. Dr. Gordon

In his March 20, 2007 Physical RFC Assessment, Dr. N. Gordon reported a primary diagnosis of back strain and a secondary diagnosis of a left elbow contracture. AR 303. In the section outlining exertional limitations, Dr. Gordon indicated that Ms. Grim could occasionally lift and/or carry 20 pounds; frequently lift and/or carry ten pounds; stand and/or walk with normal breaks for a total of about six hours in a eight hour day; sit with normal breaks for a total of about six hours in a eight hour day; and push and/or pull in a limited fashion in the upper extremities. AR 304. With respect to manipulative limitation, Dr. Gordon indicated that Ms. Grim is limited in reaching all directions, but unlimited in handling, fingering, and feeling. AR 305. Dr. Gordon indicated that Ms. Grim has no postural, visual, communicative, or environmental limitations. AR 304-06. Dr. Gordon also noted that there are no treating/examining source conclusions that are significantly different from his findings. AR 307.

### B. ALJ Hearing

A hearing before Administrative Law Judge Robert Wenten was held on April 8, 2009. AR 17. During the hearing, Ms. Grim testified that she was not working and was receiving food stamps.

4

AR 23. Ms. Grim further testified that she keeps her legs elevated because they swell at the knees which prevents her from standing. AR 28. As for walking, she claimed that she pushes herself to walk short distances. AR 28. She testified that she walks her puppy around the block once a day. AR 44. Ms. Grim acknowledged that she can drive herself to the grocery store, buy food, and drive back home. AR 30. However, she stated that if she stands for too long, pain in her back goes down into her right leg, just past her knee. AR 32.

In describing her past work, Ms. Grim stated that her duties included taking care of the drivers, ensuring they had everything on their trucks, working with customers over the phone, and lifting packages. AR 35, 38-39. She testified that she tried to go back to a modified work with the same employer, but she was on her feet often and had to keep taking pain pills. AR 39. Ms. Grim later testified that, were she to go back to her job, the biggest challenge would be trying to concentrate given the medications she is on. AR 63-64.

Ms. Grim testified that her knee problem started in 2002, and her back got worse and worse over time. AR 40. Further, Ms. Grim testified that she cannot grip things with her left hand, though she can grasp things occasionally, and cannot crawl. AR 51-52, 56. Were Ms. Grim to pick up the phone with her left hand, she would have to switch over to her right hand not long after. AR 56. However, she also testified that before the injury, she always picked up the phone with her right hand and "had everything set up on [her] right." AR 59.

A vocational expert, Mr. Nelson, testified that the work Ms. Grim did required an SVP of 2. AR 46-47. In response to the ALJ's hypothetical, Mr. Nelson testified that Ms. Grim would not be able to perform the medium physical demands of the position, though the routine office clerk position was "doable." AR 49. He also testified that elevating one's legs would not impair one's ability to perform as an office clerk. AR 51. However, Mr. Nelson did testify that a person with Ms. Grim's restrictions, work history, and a moderate problem with persistence, pace, and concentration could not feasibly be expected to perform unskilled employment. AR 60.

**C.     ALJ Decision**

In a decision dated August 25, 2009, the ALJ found that Ms. Grim was not under a disability from August 24, 2002 until the date of the decision, but did suffer from lumbar degenerative disc

5

1 disease, degenerative joint disease of the knees, and status post left elbow fracture with residuals.
2 AR 8, 10, 300. The ALJ found that Ms. Grim has the residual functional capacity ("RFC") to
3 perform sedentary work, with the exception of "lifting/carrying 10 pounds frequently and 20 pounds
4 occasionally, occasional reaching with the left upper extremity, occasional stopping, crouching,
5 crawling and kneeling, sitting for 6 hours in an 8 hour day with breaks every 2 hours,
6 standing/walking for 2-4 hours in an 8 hour day with breaks every 30 minutes, and limitation to
7 simple reading and writing." AR 11, 302.

8     The ALJ made his RFC conclusion after considering all the symptoms and the extent to
9 which they are consistent with objective medical evidence. He found that the impairments could
10 reasonably be expected to cause the alleged symptoms, but that Ms. Grim's statements about the
11 intensity, persistence, and limiting effects were not credible to the extent that they were inconsistent
12 with the RFC assessment. AR 12. The ALJ noted the diseases and lack of motion which Ms. Grim
13 suffered from, but also pointed out that her reports of her daily activities were inconsistent with an
14 inability to perform any work. AR 13. The ALJ recognized that Ms. Grim's medical records
15 showed limited and conservative treatments in her past, and if doctors found her symptoms to be as
16 severe as she had reported, the treatments would be inconsistent with the actual nature of the
17 symptoms. AR 13.

18     The ALJ further found that Ms. Grim would not be capable of performing her previous work
19 as a warehouse support worker, but could continue performing as an office clerk, which is not
20 precluded by her RFC. AR 13, 301-07. In conclusion, the ALJ found that Ms. Grim was not
21 disabled. AR 14.

## STANDARD OF REVIEW

25     According to 42 U.S.C. § 405(g), the Court's jurisdiction is limited to determining whether
26 the findings of fact in the ALJ's decision are supported by substantial evidence or were premised on
27 legal error. 42 U.S.C. § 405(g); see Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998).
28 Substantial evidence is defined as relevant evidence which a reasonable person might accept as

6

adequate in support of a conclusion; it is "more than a mere scintilla but less than a preponderance." Id.; see also Richardson v. Perales, 402 U.S. 389, 401 (1971); Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997).

To determine whether the ALJ's decision is supported by substantial evidence, courts review the administrative record as a whole, weighing both the evidence that supports and detracts from the ALJ's decision. Sandgathe, 108 F.3d at 980 (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995.) If the evidence is susceptible to more than one rational interpretation, the Court must uphold the ALJ's conclusion. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). The trier of fact, not the reviewing court, must resolve conflicting evidence, and if the evidence can support either outcome, the reviewing court may not substitute its judgment for the judgment of the ALJ. Id.; see also Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir. 1992). An ALJ's decision will not be reversed for harmless error. Id.; see also Curry v. Sullivan, 925 F.2d 1127, 1131 (9th Cir. 1991).

### A. Definition and Determination of Disability

In order to qualify for disability insurance benefits, Plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The SSA utilizes a five-step sequential evaluation process in making a determination of disability. 20 C.F.R. § 404.1520 (2009); see Reddick, 157 F.3d 715, 721. If the SSA finds that the claimant is either disabled or not disabled at a step, then the SSA makes the determination and does not go on to the next step; if the determination cannot be made, then the SSA moves on to the next step. 20 C.F.R. § 404.1520.

First, the SSA looks to the claimant's work activity, if any; if the claimant engages in substantial gainful activity, he or she is not disabled. 20 C.F.R. § 404.1520(a)(4)(I). Second, the SSA considers whether the claimant suffers from a severe impairment or number of impairments which has lasted or is expected to last twelve months or end in death. 20 C.F.R. §404.1520(a)(4)(ii). Third, the SSA considers the severity of the impairments; the claimant is disabled if he or she has an

impairment that meets or equals one of the listings set forth in 20 C.F.R., part 404, subpart P, appendix 1, which sets forth impairments whose level of severity conclusively establishes disability, irrespective of vocational factors. 20 C.F.R. § 404.1520(a)(4)(iii). Fourth, the SSA considers the residual functional capacity ("RFC") and past relevant work; if the claimant can still engage in past relevant work, he or she is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv). Fifth, the SSA again considers the RFC and age, education, and work experience to see if the claimant is able to make an adjustment to another occupation in the national economy. 20 C.F.R. § 404.1520(a)(4)(v); 20 C.F.R. § 404.1560(c).

### B. Credibility.

In determining whether a claimant's testimony regarding subjective pain or symptoms is credible, the ALJ must engage in a two-step process. Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007). First, the ALJ must determine whether the claimant has submitted objective medical evidence of the underlying impairment "which could reasonably be expected to produce the pain or other symptoms alleged." Id. (citing Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991). Next, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of his symptoms by offering specific, clear and convincing reasons for doing so. Id. at 1036 (citing Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996)). If the ALJ's credibility finding is supported by substantial evidence in the record, the Court may not second-guess the ALJ's finding. Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002); see also Morgan v. Commissioner of the Social Security Administration, 169 F.3d 595, 600 (9th Cir. 1999).

## V. DISCUSSION

Ms. Grim argues that the ALJ erred by: (1) rejecting her treating medical source opinions without providing specific and legitimate, clear and convincing reasons supported by substantial evidence; (2) failing to provide clear and convincing reasons for discounting her credibility; (3) failing to properly consider the effects of obesity on her RFC and ability to perform her past relevant work; (4) failing to pose a proper hypothetical to the vocational expert, provide a clear finding of fact as to the mental and physical demands of her past relevant work, or rely on a proper RFC

8

assessment; and (5) failing to take testimony from a medical expert. Ms. Grim seeks remand for an award of benefits. As discussed below, none of the alleged errors constitute reversible error, and Ms. Grim's motion is DENIED.

### A. Whether the ALJ Erred by Rejecting Ms. Grim's Treating Medical Source Opinions Without Providing Specific and Legitimate, Clear and Convincing Reasons Supported by Substantial Evidence in Violation of SSR 96-2p.

Ms. Grim contends that the ALJ did not provide clear and convincing reasons for rejecting the opinions of treating physicians Dr. Tang and Dr. Warbritton. The Social Security Administration ("SSA") counters that the ALJ provided several reasons, supported by substantial evidence, for relying less on Dr. Warbritton and Dr. Tang and giving more weight to Dr. Abeyta's opinion.

An ALJ must give more weight to the opinions of treating physicians that are not contradicted by substantial evidence than to those of physicians who have no clinical relationship. 20 C.F.R. § 416.927(d)(2). The SSA gives more weight to treating physicians because of their ability to provide a "detailed, longitudinal picture" of impairments and their greater opportunity to know and observe the plaintiff as an individual. Id.; see 20 C.F.R. § 404.1527(d)(2); Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989). If the treating source's opinion is found to be "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record," it will be given controlling weight. 20 C.F.R. § 404.1527(d)(2); 20 C.F.R. 416.927(d)(2); Orn v. Astrue, 495 F.3d 625, 631 (9th Cir. 2007). "A finding that a treating source medical opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to controlling weight, not that the opinion should be rejected." Orn, 495 F.3d at 631-632. To reject the opinion of a treating source that conflicts with that of an examining source, the ALJ must "make findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." Magallanes, 881 F.2d at 751 (citing Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987)); see also Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).

**1. Dr. Warbritton**

9

1   The ALJ found that Ms. Grim had been treated by orthopedic surgeon Dr. Warbritton, who
2 reported that Ms. Grim had hardware removal following open reduction and internal fixation. AR
3 11. Dr. Warbritton found that Ms. Grim had a TTD after she attempted to return to work with some
4 modification. AR 11, 220. Dr. Warbritton further noted the loss of extension in Ms. Grim's left
5 elbow and her inability to kneel, squat, or climb. AR 11-12, 229.

6   Ms. Grim argues that the ALJ decision noted Dr. Warbritton's report of Ms. Grim's TTD in
7 2003 due to her left elbow and right knee, but rejected his July 2004 findings of permanent limited
8 range of motion of the left elbow; frequent slight to moderate pain in the left elbow; limitations on
9 repetitive or forceful pushing, pulling, and twisting; frequent slight to moderate pain in the knee with
10 any significant weight bearing becoming moderate to severe with kneeling; squatting or climbing
11 with moderate pain with standing or walking continuously in eight hour day; and preclusion from
12 climbing, walking on uneven terrain, squatting, kneeling, crouching, crawling, pivoting or similar
13 activities. AR 11-12, 226, 229. Ms. Grim contends that Dr. Warbritton's reports indicate that his
14 conclusions were supported by objective medical findings, including surgical records, MRI and x-
15 ray results. Pl.'s Reply at 4-5.

16   The SSA notes that the ALJ found Dr. Warbritton's opinion that Ms. Grim could not kneel,
17 squat, or climb due to postural limitations to conflict with that of other doctors and even his own  o
18 pinion. AR 12, 240. Specifically, in May 8, 2003, Dr. Warbritton reported that Ms. Grim had full
19 extension and flexion of the knees without bilateral pain. AR 240. The ALJ rejected Dr.
20 Warbritton's opinion that Ms. Grim is unable to kneel, squat or climb to the extent that the medical
21 record indicated occasional postural limitations but did not justify the extreme limitations indicated
22 by Dr. Warbritton. AR 12. Dr. Warbritton recommended knee surgery in November 2003 and
23 performed the surgery in February 2004. AR 177-78, 257. Further, Dr. Abeyta's opinion in
24 February 2006, after her 2004 knee surgery, confirmed Ms. Grim's full range of motion in her knees.
25 AR 302.

27   Ms. Grim also argues that, had Dr. Warbritton's 2004 opinion been given controlling
28 authority, the RFC would have shown that Ms. Grim was limited to less than the full range of light

10

work and she was unable to perform her past work. Ms. Grim's previous work consisted of two different types of work: office clerk and warehouse support worker. AR 13. The vocational expert, Mr. Nelson, testified in response to the ALJ's hypothetical that a person with the alleged disabilities that Ms. Grim has would be expected to do the job of office clerk, but could likely not do the job of warehouse support worker. AR 47-50. The ALJ's hypothetical was based on reports of attending physicians, including that of Dr. Warbritton. The ALJ did cite Dr. Warbritton's findings on the twenty degree limitation on left elbow extension; preclusion against lifting significant weight; and preclusion against walking continually in an eight-hour day where Dr. Abeyta also formed a similar opinion. AR 229, 301-02. Further, the ALJ relied on both objective medical evidence and opinion evidence, specifically referring to Dr. Warbritton's July 2004 report which was summarized in a rating determination report. AR 11 (paraphrasing Dr. Warbritton's 2004 report where he indicated "20 degree loss of extension of left minor elbow joint; frequent slight to moderate pain in elbow with vigorous use becoming moderate with very forceful use or with repetitive or forceful pushing, pulling and twisting." AR 229). Therefore, the ALJ correctly relied on Dr. Warbritton's 2004 report, along with other medical evidence, in determining the appropriate RFC.

The ALJ properly credited Dr. Warbritton where his opinion was consistent with the medical evidence and discredited him where his opinion conflicted with other opinions, and the ALJ found specific, legitimate reasons based on substantial evidence in the record to reject Dr. Warbritton's opinion.

### 2. Dr. Tang

Dr. Tang reported in September 2006 that Ms. Grim was unable to work since earlier that year due to back pain. AR 12, 283. Dr. Tang also reported that an x-ray indicated possible degenerative disc disease. AR 12, 301. Ms. Grim contends that the ALJ failed to provide specific reasons for rejecting Dr. Tang's opinions.

The ALJ stated, however, that Dr. Warbritton characterized Ms. Grim's back pain as "minor," which conflicted with Dr. Tang's opinion of Ms. Grim being unable to work due to the severity of her back pain. AR 12, 235, 301. Further, the ALJ characterized Dr. Tang's opinion as being unsupported by objective findings of significant disc disease. AR 12. Dr. Tang provided one

report of an x-ray indicating *possible* degenerative disc disease, yet did not refer Ms. Grim to a specialist. AR 301. Given the inconsistency of opinions and the absence of further appropriate measures, the ALJ gave specific, legitimate reasons supported by substantial evidence in the record for rejecting Dr. Tang's opinion.

### 3. Dr. Abeyta

The ALJ accepted Dr. Abeyta's opinion and report of Ms. Grim's elbow fracture, right knee surgery in July 2003, and complaints of back pain. AR 12, 301. An x-ray in Dr. Abeyta's records indicated narrowing consistent with degenerative disc disease, supporting Dr. Tang's report of the possible disease. AR 12, 300-02. The ALJ also took note of the musculoskeletal low back pain and left elbow contracture that limited Ms. Grim to light work – more "specifically that [Ms. Grim] could lift/carry 10 pounds frequently and 20 pounds occasionally, stand/walk for 2-4 hours in an 8 hour day with breaks every 30 minutes, and sit for 6 hours in an 8 hour day with breaks every 2 hours secondary to musculoskeletal low back pain, and left elbow flexion contracture." AR 12, 302.

Ms. Grim argues that the ALJ improperly relied on the opinion of a one-time non-treating consultative examiner and adopted it for the purposes of the decision without stating specific, clear, and convincing explanations. The ALJ did note the consistency in opinion between Dr. Abeyta and the state agency medical consultant, Dr. Gordon, when looking at medical signs and laboratory findings in concluding that Ms. Grim's RFC was for less than the full range of light work. AR 12, 302, 304-07. Dr. Abeyta is also an orthopedic specialist and conducted further objective testing to define the pain as musculoskeletal. AR 302. The SSA also notes that Dr. Abeyta's opinion was more restrictive than that of other reviewing doctors, such as Dr. Gordon, with respect to postural limitations, and actually supports a more favorable medical opinion for Ms. Grim in this proceeding. The state agency's doctors reported that Ms. Grim could stand and or walk for a total of six hours in a eight-hour workday and sit (with normal breaks) for a total of about six hours in an eight-hour workday. AR 304. By contrast, Dr. Abeyta opined that Ms. Grim could only stand for two to four hours with regular breaks every 30 minutes and sit six hours with breaks every two hours. AR 302. The ALJ accepted Dr. Abeyta's more restrictive limitation that Ms. Grim was limited to occasional

postural activities such as stopping, crouching, crawling, and kneeling. AR 12.

The ALJ pointed out the similarities in Dr. Abeyta's report to those of Dr. Tang and the state agency doctor. Despite Ms. Grim's argument that Dr. Abeyta's review does not mention Dr. Warbritton or Dr. Tang, Dr. Abeyta's report relies on a radiology interpretation that Dr. Tang ordered and received February 21, 2006. AR 300. There is substantial evidence in the record based on Dr. Abeyta's opinion and examination on which the ALJ relied.

### 4. Dr. Gordon

The ALJ noted that the state agency medical consultant, Dr. Gordon, reported that Ms. Grim could lift/carry ten pounds frequently and twenty pounds occasionally secondary to back strain and left elbow contracture. AR 12, 304. The ALJ stated that Dr. Gordon's assessment was consistent with the record. Evidence in the medical record shows that Ms. Grim had full and pain-free range of motion in her hips and knees. AR 240. Ms. Grim argues that the ALJ relied on a Physical Residual Functional Capacity Assessment form that is not supported by substantial evidence where Dr. Gordon had never met Ms. Grim and did not cite specific facts.

As a reviewing physician, Dr. Gordon based his opinion on the records and evidence in the file. AR 303. Ms. Grim's medical history and Dr. Warbritton's examination of her right knee in May 2003 described minimal crepitus, no pain, no inflammation and no tenderness of the lateral soft tissue, but mild to moderate tenderness on palpitation of the medial soft tissue. AR 11-12 (citing AR 240). At the May 2003 examination, Dr. Warbritton also found that extension and flexion of the knees were full and without pain bilaterally. AR 240. Dr. Gordon's assessment constituted substantial evidence to support the ALJ's RFC finding. See Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1174 (9th Cir. 2008) (holding that the opinion of a state agency reviewing psychologist reasonably supported the ALJ's decision).

### B. Whether the ALJ Erred by Failing to Provide Clear and Convincing Reasons for Finding Ms. Grim Lacked Credibility in Violation of SSR 96-7p.

Ms. Grim contends that the ALJ's decision should be reversed because the ALJ did not make a malingering finding and failed to provide clear and convincing reasons to challenge her credibility. The ALJ provided clear and convincing reasons for finding that Ms. Grim lacked

credibility because his decision was based on the inconsistency between Ms. Grim's subjective statements regarding her pain and the RFC; the inconsistency between Ms. Grim's reports of her daily activities and her alleged inability to work; the inconsistency between the conservative treatment and the alleged severity of Ms. Grim's pain; and the inconsistency between the alleged side effects of Ms. Grim's medications and the absence of any mention of side effects in doctors' reports. See Orn v. Astrue, 495 F.3d 625, 636 (9th Cir. 2007) ("Factors that an ALJ may consider in weighing a claimant's credibility include reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, and 'unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment.'"). Specifically, the ALJ found that Ms. Grim does suffer from lumbar degenerative disc disease, degenerative joint disease of the knees, and status post left elbow fracture with residuals, but that her statements regarding the intensity, persistence and limiting effects of her symptoms were not credible to the extent that they were inconsistent with the RFC. AR 10, 12, 300. The ALJ acknowledged that the primary basis of the claimed disability was pain but stated that pain cannot have a significant effect on a disability decision without medical signs or laboratory findings showing a present impairment that can reasonably be expected to produce the alleged pain. AR 13.

Ms. Grim argues that the ALJ cannot discredit her testimony as to the severity of her impairments merely because it is unsupported by objective medical evidence. She claims that her daily activities, namely playing computer games, walking around the block, and driving the car, are not representative of her ability or inability to work. Ms. Grim also contends that the ALJ cannot rely on observations of her daily activities where they are limited and carried out with difficulty. See Benecke v. Barnhart, 379 F.3d 587, 594 (9th Cir. 2004). However, information such as Ms. Grim's daily activities, prior work record, and information and observations by physicians and third parties can be relevant where her alleged symptoms suggest a greater restriction than can be demonstrated by objective medical evidence. AR 13. See Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008) (listing "daily activities" as one of many factors an ALJ may use in weighing credibility). The ALJ noted the inconsistency between Ms. Grim's reports of her daily activities and her inability to perform any work. AR 13. For example, Ms. Grim is able to play games on her

14

computer, walk a block and drive short distances, but she must keep her legs elevated to prevent swelling and her back and leg pain were so severe as to prevent her from returning to work. AR 13, 25, 28-32. The ALJ did not err in considering all of these activities together as part of his determination that Ms. Grim lacked credibility.

Ms. Grim further argues that her subjective complaints are supported by and consistent with the opinions of her treating physicians. She points out that Dr. Warbritton opined that knee surgery was required because she did not respond to conservative care. AR 174. However, the ALJ noted Ms. Grim's history of surgery on her left elbow and right knee, AR 11-12, and found that the conservative and limited treatment physicians recommended and responded with was inconsistent with what would have been expected if the actual symptoms and limitations were as severe as Ms. Grim alleged. AR 13. Ms. Grim also contends that the ALJ cannot base an adverse credibility finding on her failure to seek or continue treatment where she could not afford it or where the treatment was not likely to be successful. However, the ALJ did not cite Ms. Grim's failure to seek or continue treatment to support his finding so this argument is misplaced.

Finally, Plaintiff takes issue with the ALJ's statement that a "review of the claimant's medications does not indicate anything which would impair her concentration." AR 13. She argues that she brought two medications (Buspar and Tramadol) to the hearing and told the ALJ that they made it hard for her to concentrate. AR 41-44. Plaintiff's motion cites two articles from the U.S. National Library of Medicine's website relating to the two medications she brought to the hearing, though these articles are not part of the record and do not appear to have been presented to the ALJ. The first article relates to Tramadol, which is a medication prescribed for moderate to moderately severe pain. The second article relates to Buspirone, which is used to treat anxiety disorders. The website lists possible side effects of these drugs including, among others, dizziness, sleepiness, drowsiness, and difficulty staying or falling asleep.

At her ALJ hearing, Ms. Grim mentioned side effects of dizziness and drowsiness, which are consistent with some of the listed potential side effects of these drugs. However, these symptoms are also directly contradicted by another potential side effect listed for both drugs - difficulty sleeping. More importantly, there is no indication in the record that Ms. Grim reported these

15

symptoms to any doctor, which is recommended if they are severe or do not go away. The ALJ was not required to accept her subjective complaints about the side effects of these drugs on her, but instead also looked at her medical records to evaluate her credibility. See Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1985) ("A claimant's self-serving statements may be disregarded to the extent they are unsupported by objective findings."). The ALJ cited Dr. Abeyta's March 10, 2007 report (Ex. 5F at AR 301-302) which does not list either of these drugs as medications Plaintiff was taking or indicate that Plaintiff reported any symptoms of drowsiness, dizziness or difficulty concentrating. The ALJ also cited Dr. Tang's July 6, 2007 and March 7, 2007 reports (Ex. 11F at 342-345). Dr. Tang's reports also do not mention Tramadol or Buspar as medications Plaintiff was taking. Since Plaintiffs statements about the limiting effects of the medications were not substantiated by objective medical evidence (indeed, it is not even clear when she was prescribed those medications and she apparently did not report any side effects of them to a doctor), the ALJ was allowed to make a credibility determination. He properly found her statements not credible based on her daily activities and the limited/conservative course of treatment prescribed by doctors.

In sum, the ALJ's credibility determination provided clear and convincing reasons based on substantial evidence that undermine Ms. Grim's testimony.

### C. Whether the ALJ Erred by Failing to Consider the Effects of Obesity on Ms. Grim's Residual Functional Capacity and Ability to Perform Her Past Relevant Work

Ms. Grim argues that the ALJ improperly failed to consider the effects of her obesity at step 4, despite having identified the obesity at step 2. She argues that the ALJ should have considered the effects of obesity on her hypertension, arthritis, and degenerative disc disease but does not cite to the records for her position. She relies on the Code of Federal Regulations, in which the musculoskeletal listing states that "[o]besity is a medically determinable impairment that is often associated with disturbance of the musculoskeletal system, and disturbance of this system can be a major cause of disability in individuals with obesity." 20 C.F.R. Part 404, Subpart P, App. 1 §§ 1.00(Q), 4.00(I)(1). Ms. Grim further quotes the regulation as saying that "the combined effects of obesity with musculoskeletal impairments can be greater than the effects of each," which should be considered "when assessing an individual's residual functional capacity." Id.

16

Here, the ALJ did note that obesity was indicated in the record, but held that it was not vocationally severe. AR 10 ("significantly overweight" at AR 239). No physician indicated in the record that Ms. Grim's obesity was medically significant or limited her functioning. The ALJ was limited to the record presented, and could not consider the effects of obesity on other impairments if physicians did not note any. Additionally, individuals with obesity do not necessarily suffer from the impairments for which obesity can be a risk factor. See SSR 02-01p. The ALJ appropriately considered obesity in his decision.

**D. Whether the ALJ Erred by Failing to Pose a Proper Hypothetical to the Vocational Expert, to Provide a Clear Finding of Fact as to the Mental and Physical Demands of the Claimant's Past Relevant Work, or to Rely Upon a Proper Residual Functional Capacity Assessment in Finding that Ms. Grim Could Perform her Past Relevant Work in Violation of SSRs 82-61, 82-62, 83-12, and 96-8p.**

Ms. Grim argues that the ALJ posed an incomplete and inaccurate hypothetical to the vocational expert ("VE") when he assumed that she had the ability to stand or walk for two hours and sit for six hours. She contends that as a result of the incorrect hypothetical, the VE responded that Ms. Grim could not perform her work as a warehouse support worker but could act as an office clerk. AR 49. She also argues that the hypothetical omitted Ms. Grim's inability to maintain concentration, persistence and pace; the need to elevate her feet; and the need to alternate sitting and standing. Ms. Grim disputes the VE's testimony and argues it has no evidentiary value because it is based on a hypothetical that does not take into account all of her limitations, despite the VE acknowledging that employment would be unfeasible for Ms. Grim if she had a "moderate problem with persistence and pace and concentration." AR 60.

The ALJ's hypothetical included Ms. Grim's need to "sit and stand alternately throughout the course of a workday," contrary to Ms. Grim's argument. AR 48. The hypothetical also included Ms. Grim's need to elevate her feet, which the VE took into account when testifying that it would not be problematic for Ms. Grim in performing work as an office clerk. AR 50. The ALJ did not include all of the limitations opined by Dr. Warbritton and Dr. Tang because only limitations that are credible and supported by substantial evidence in the record need to be included. See Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005). All of the limitations set forth in the ALJ's

17

hypothetical were considered in the VE's RFC finding. AR 11, 47-48.

Ms. Grim further opposes the ALJ's decision because the ALJ characterized the office clerk position as part of her past work, thereby affirming that she could not perform the entirety of her past relevant work. AR 61-62 ("I'm not sure because the office clerk part was a job she had and at some point it transitioned into this other job. ... The question really I think that you have to get past is the question of whether she could do the office part of her past work."). She disputes the decision because the RFC disregarded her subjective complaints and the opinions of her treating medical sources in concluding that she could perform part of her previous work. The VE did, however, take into consideration Ms. Grim's specific limitations when opining that she would be able to perform work as a routine office clerk but that those same limitations would preclude her from working as a warehouse support worker. AR 49-50. The VE properly considered Ms. Grim's specific limitations that were supported by the record and posed in a proper hypothetical.

### E. Whether the ALJ Erred by Failing to Take Testimony from a Medical Expert in Accordance with SSR 96-6p.

Ms. Grim argues that the ALJ failed to obtain an updated medical expert opinion even though "additional medical evidence is received that in the opinion of the [ALJ] or the Appeals Council may change the state agency medical or psychological consultant's finding that the impairment is not equivalent in severity to any listed impairment in the Listing of Impairments." SSR 96-6p. In the alternative, Ms. Grim requests that the SSA seek updated opinions from medical, psychiatric, and psychological experts in accordance with SSR 96-6p. She asserts that qualified medical expert testimony could have informed the ALJ in considering conflicting opinions, the claimant's credibility, and the side effects of her medications. However, this Court is limited to determining whether the ALJ's decision was supported by substantial evidence in the record.

Ms. Grim argues that additional medical evidence would demonstrate that she suffers from an impairment that is different or unique in severity so as to alter the medical findings. Ms. Grim cites additional medical records relating to her right knee prepared by Dr. Tang and Dr. Warbritton that she submitted to the ALJ one month after the hearing even though they concerned a procedure that was conducted years earlier. AR 171-179, 370-83. In addition to being untimely, the additional

18

evidence did not include any medical opinion inconsistent with the opinions and records on which the ALJ relied and is simply a more detailed report of the knee surgery that Dr. Warbritton performed in early 2004. AR 174-79 (identifying the surgical procedure as (1) arthroscopic partial medial and lateral meniscectomies right knee; (2) arthroscopic tricompartmental synovectomy right knee; and (3) arthroscopic debridement and limited chondroplasty lateral tibial plateau right knee). Plaintiff does not explain how these records would have changed the reviewing doctors findings, given that the reviewing doctors had considered the fact that Ms. Grim underwent surgery on her right knee "with an arthroscopy and debridement," AR 301. Although Dr. Abeyta's report indicates that the knee surgery was performed in July 2003 rather than February 20, 2004, as stated in the operative report,[1] Dr. Abeyta correctly noted the type of procedure performed on Ms. Grim's knee and this error in identifying the date of the surgery would not affect Dr. Abeyta's finding that the impairment was not equivalent in severity to any listed impairment, pursuant to SSR 96-6p.

Ms. Grim also cites medical records prepared by Dr. Tang in 2007 and 2008. AR 370-83. However, Ms. Grim does not show how any of the additional records are inconsistent with the evidence that the ALJ relied upon, nor does she explain how the additional evidence would alter medical consultants' findings. These additional records became part of the administrative record, though there is no indication in the decision or cover letter from the SSA that the ALJ considered the evidence that Ms. Grim contends would alter findings. Even if the ALJ had considered the additional evidence in coming to his decision, there is nothing in it that would controvert his conclusion based on substantial evidence in the record. For example, in the additional records submitted by Ms. Grim, Dr. Warbritton made an operative finding that "[e]xamination under anesthesia revealed full range of motion without ligament instability." AR 177. The ALJ did not make explicit reference to these records that Ms. Grim argues is new additional evidence of her impairments, but his decision was supported by substantial evidence.

**F. Whether Remand for Award of Benefits is Proper Because if not for the Error in Finding Ms. Grim Could Perform her Past Work, Social Security Regulations**

---

[1] The Court notes that Plaintiff's counsel made the same error in identifying the date of Ms. Grim's knee surgery in his post-hearing letter enclosing additional medical records to the ALJ. See AR 167 ("The August 2002 accident resulted in a knee injury that is documented by an MRI of 7/17/03 and required surgery on 7/24/03."

19

**Would Have Required that She Be Found Disabled Pursuant to the Medical Vocational Guidelines.**

Ms. Grim argues that but for the error in finding her capable of performing part of her past work, the case would have been decided at the fifth step of the evaluation process. Where further development of the record would not be useful, Ms. Grim requests that the Court remand for immediate award of benefits, relying on Benecke v. Barnhart, 379 F.3d 587 (9th Cir. 2004) (holding that the district court abused its discretion by remanding for further administrative proceedings and remanding with instructions to the Commissioner of Social Security for an award of benefits). She contends that the ALJ failed to provide legally sufficient reasons for rejecting treating medical source opinion and not finding her credible. She argues that if the ALJ had given proper weight to those opinions, he would have found her disabled and unable to perform her previous work. This request is rejected for the reasons discussed above. Specifically, the ALJ cited substantial evidence from the record supporting his decision in finding Ms. Grim not disabled and capable of performing part of her past work. The ALJ did not completely discredit Ms. Grim's testimony, but where it was in conflict with the treatment received and her daily activities, he drew conclusions as to her credibility. The same is true of the opinions of her treating physicians, Drs. Warbritton and Tang – where their opinions were consistent with the evidence in the record, the ALJ so noted and gave weight to them; where they differed in conclusion or to the severity of pain, the ALJ pointed to the inconsistencies to explain why he relied less on those opinions.

**CONCLUSION**

Accordingly, Plaintiff's Motion for Summary Judgment is DENIED and Defendant's Motion for Summary Judgment is GRANTED.

**IT IS SO ORDERED.**

Dated: May 8, 2012

ELIZABETH D. LAPORTE
United States Magistrate Judge